SM

**RECEIVED**

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

NOV 0 1 2021

THOMAS G. BRUTON
CLERK, US DISTRICT COURT

JOKARI T. MILLER, PRO SE,       )
              PLAINTIFF,       )   1:21-cv-05830
              V.       )  CA  Judge Manish S. Shah
        FACEBOOK, INC.,       )   Magistrate Judge Sheila M. Finnegan
           DEFENDANT.       )   PC6
                                  RANDOM

<u>CLAIM</u>

NOW COMES the Plaintiff, Jokari T. Miller, pro se, pur-
suant to the appropriate United States Code, and presents this
claim to this Honorable Court. In support of his claim, he
states as follows:

Parties

1. Plaintiff, Jokari T. Miller, pro se, is a customer/user of
the social media platforms known as "Facebook", and "Instagram".

2. Defendant, Facebook, Inc., is a company/entity of which was
founded by Mark Zuckerberg, and owns both "Facebook", and
"Instagram" social media platforms (amongst other entities).

Statement of Facts

3. The Plaintiff, Jokari T. Miller, pro se, applied for, but
was denied, what is known as a "verified account" with both
"Instagram", and "Facebook" social media platforms.

4. A verified account (also sometimes referred to as a "blue-
check") is supposed to be for individuals, or entities of whom
their identities have a need to be protected from "imposters"
whom may attempt to create social media accounts under their
names due to their status, or importance to a certain group
of people, or their importance or "noteworthiness" to society.

5. The "verified accounts" are issued to all sorts of indivi-
duals, from various "walks-of-life", amongst them are scien-
tists, engineers, sports figures, and other entertainers (to
name a few).

6. The Plaintiff attempted to apply via the Instagram "app"

page 1

on the iOS iPhone, and was instructed to render high-resolution photos of his various forms of identification.

7. The Plaintiff submitted the following:
   a. United States Passport
   b. REAL ID version of his Indiana Operator's License
   c. Social Security Card
   d. Various internet links to pertinent information indicating why he would need a "verified account".

8. Of the various information of which the Plaintiff submitted, this information included the Plaintiff being noted on an internet website of which is reserved strictly for scientists, engineers, and educators, a site entitled "Researchgate".

9. One cannot simply place themselves onto "Researchgate", they instead, must be thoroughly vetted, and accepted by the scientific community, and the Plaintiff has been noted for his research in the field of nanotechnology (nano-robotics).

10. The Plaintiff's following circumstances garner an urgent need for a "verified account" :
   a. The Plaintiff is the creator of an entirely new "genre" of science, and engineering, known as "Nuclear Material Neutralization Research" (N.M.N. Research).
   b. The Plaintiff has a representative equation named after him, known as the "Jokari Equation" (also known as the "Jokarhi Equation").
   c. The Plaintiff is the inventor of an "Initial Foundation Identity Processor/BIOS".
   d. The Plaintiff is the inventor of the "Neutron Deprivation System".
   e. The Plaintiff is a published scientist, engineer, and Inventor.
   f. The Plaintiff was noted in the September 2019 issue of "LIFOTI" magazine.
   g. The Plaintiff is the founder of "UG Robotics" (formerly "Uganda Robotics").
   h. The Plaintiff was noted for his science, and engineering in an official newsletter of which is published on the State of Illinois' website via the Illinois Department of Corrections, "Two Roads" Magazine/Newsletter, February 2021, v9.

11. Amongst the aforementioned factors, the fact that the Plaintiff is not merely an average scientist, or engineer, but is in-

stead, the creator of an entirely new "genre" (if you will) of both science, and engineering, place the Plaintiff in the category of someone of whom has an immediate need to protect his identity on public forums such as "Facebook", "Instagram", etc.

12. Furthermore, the Plaintiff has previously received two (2) notification concerning the successful theft of his identifying information; first, in the form of a letter from the "Department of the Army", stating that a U.S. Army laptop computer with the Plaintiff's personal information on it was stolen, and never recovered; second, was a letter from the "Department of Personnel Management", stating that there was a massive security data-breach by computer hackers in which AGAIN, the Plaintiff's personal information (including social security number, date of birth, etc.) was stolen.

13. Facebook customers/users must have the confidence, and assurance that if they attempt to connect, communicate with, or make a reference to the Plaintiff, then they will not be intercepted by an imposter, or multiple imposters whom may at any time, create a "phony" social media account using the Plaintiff's name, and if it just so happens to be one of the individuals of whom has stolen the Plaintiff's personal information, then the "imposters" would have no problem whatsoever being able to utilize the Plaintiff's information to disguise themselves as the Plaintiff.

14. Without the attechment of the standard "blue-check" denoting a verified account, the various scientists, engineers, educators, and other users whom may attempt to connect with the Plaintiff, will not have the assurance they need to do so.

15. An imposter could cause major damage, given the nature of the type of science, and engineering research, and development of which the Plaintiff is involved in, particularly the "Nuclear Material Neutralization Research" of which he is involved in which has major National Security implications, as well as global geo-political implications.

16. The Plaintiff, of whom is a Black man, whom has various friends, associates, and collegues whom he personally knows have been issued

a **veri**fied account from the Defendant, and some of them have never applied for a verified account, yet they were given some level of "favor", as the Black, and Brown (Latino/other) verified users whom the Plaintiff is familiar with, are entertainers (singers, rappers, and other entertainers); and the white verified users whom the Plaintiff knows, are scientists, engineers, educators, and other non-entertainer professionals.

17. To be clear, the Plaintiff knows Black scientist, engineers, and educators  whom have a relatively higher level of need for a "verified account" than his Black entertainer friends/associates, however, the Black scientists, engineers, and educators are not afforded verified accounts, while the Black entertainers (particularly the "rappers") whom the Plaintiff knows, have been given verified accounts IF THEY APPLY FOR IT OR NOT.

18. The Plaintiff contends that, had he decided to "go the route" of a basketball player, a rapper, singer, or other entertainer (stereotypical "Black guy" field), then given an equivalent level of accomplishments he would not be denied a verified account; but considering that he is instead, a Black scientist, and engineer/inventor, of whom has founded an entirely new "genre" of science, and engineering, then there seems to be a deliberate effort on the part of whatever, or whomever at the Defendant's, to "downplay" this Black scientist' significance in this area of which is void of any sort of "stereotypical value", disallowing another example of a Black guy "bouncing a ball", or rapping.

19. From observation, the Defendant has no problem whatsoever, issuing "verified accounts" to Black people, just as long as it is a Black person whom is in a career field which aids to perpetuate "age-old" stereotypes of Blacks being only good for playing basketball, rapping, singing, and dancing a "jig"; while Blacks whom are of equal, or greater value to society (relatively speaking) in the areas of science, and engineering, are held to a ridiculously unequal criteria with respect to being issued verified accounts.

20. To support the aforementioned statements, the Plaintiff will merely outine the example of an artist whom is only known as "Banksy".

21. Banksy is supposedly an artist whom has "mysterious" works of art that just appear suddenly, anywhere in the world (many times in the form of graffiti), and "Banksy's" identity is UNKNOWN, as he has never revealed it.

22. Consequently, it is impossible for the Defendant to have "verified" Banksy's identity, yet still, the Defendant unfairly granted "Banksy" a verified account.

23. The Plaintiff contends, that the personal information, and identification of which the Defendant requests of its' customers/ users on the "verified account" application, under the premise that this unadulterated relinquishing of the abundance of their most personal, and private documents, are a part of the verified accounts application process, WAS NOT REQUIRED OF "BANKSY", as Banksy would never submit any identifying documents to the Defendant given the chance that one of the Defendant's employees could easily disclose "Banksy's" identity, and Banksy's anonymity is all a part of his/her's "brand".

24. If a completely anonymous artist such as "Banksy" has the ability to garner a verified account from the Defendant, so too, should the Plaintiff be granted a verified account, given all of the aforementioned factors stated herein.

Conclusion

The unethical, and unequal practices which the Defendant institutes, in its' "verified accounts" application process, is not only inconsistent, but it also highlights the long-history of the Defendant misusing discretion in how they decide whom will receive a verified account, and whom will not. The fact that the Defendant has granted verified accounts to some individuals of whom have not even applied for one, while at the same time, denying a Black scientist, whom created an entirely new "genre" of science, and engineering, is discriminatory, and it is also a deceptive way for the Defendant to "collect" an abundance of data from countless customers/users which they would otherwise be reluctant to give, if not for the Defendant giving these users (including the Plaintiff) "false hope" that they may receive a verified account if they would only submit their entire lives to the Defendant. The Plaintiff is asserting that the Defendant had absolutely no intentions to issue the Plaintiff a verified account

as a Black scientist, and engineer, but if given the same level of accomplishments in the field of basketball, rap music, or any other stereotypical "Black guy thing" equal or even less than that of the Plaintiff's credit in science/engineering (relatively speaking), the Defendant would have been more incline to issue the Plaintiff a verified account, and most likely without even requiring the Plaintiff submit an application for it. The Defendant is holding Black people whom are in areas of STEM (science, technology, engineering, and mathematics) to a more stringent criteria for its' verified accounts, than that which they hold Black "entertainers" to, and they are also deceptively collecting "mountains" of data from its' users with no intentions upon even considering issuing them "verified accounts". The Defendant's past, present, and future of data collection is well-documented. The Defendant institutes computer artificial intelligence, and machine learning to "teach" its' systems. The Defendant is well-aware of the opposition, and "protest" of its' massive data-collection of which there has been backlash about in the past, as well as current new discoveries as to the Defendant's unethical use of data, and algorithms in egregious ways. Many whom oppose the Defendant's unethical practices are themselves customers/users of the Defendant's platforms. So, the Defendant knows that they must be creative in their attempt to garner such exclusive, and personal documents, and data from these "reluctant" users, and the Plaintiff contends, that this (so-called) "verified accounts" application is merely one of the deceptively clever ways that the Defendant has "deployed" for data-collection.

WHEREFORE, the Plaintiff, Jokari T. Miller, pro se, respectfully requests that this Honorable Court grants him relief in the form of the following injunctions:

    a. The Defendant's issuing of a "verified account" indicator to the Plaintiff's Instagram account ("blue check").

    b. The Defendant's issuing of a "verified account" indicator to the Plaintiff's personal Facebook account.

    c. The Defendant's issuing of a "verified account" indicator to the Plaintiff's official Facebook page.

(NO MONETARY RELIEF IS BEING REQUESTED OF THE DEFENDANT)

Date 10/21/2021      /s/ _(signature)_

                                    JOKARI T. MILLER
                                    P.O. BOX 1267
                                    HAMMOND, INDIANA 46320

JOKARI T. MILLER, Y39531
6665 STATE ROUTE 146 EAST
VIENNA, ILLINOIS 62995

2021 NOV -1 AM 8:43

UNITED STATES DISTRICT COURT
CLERK OF THE COURT
219 S. DEARBORNE
CHICAGO, ILLINOIS 60604

SAINT LOUIS MO 630

THIS CORRESPONDENCE IS FROM
AN INMATE IN THE ILLINOIS
DEPARTMENT OF CORRECTIONS

60604-180099

11/01/2021-6

USA FOREVER

2021
MERCY FICTION MONTH